Charles M. PASCHAL, Jr., Acting Regional Director of the Fifteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

BUILDING AND CONSTRUCTION TRADES COUNCIL OF NEW ORLEANS, AFL–CIO, Respondent.

Civ. A. No. 14128.

United States District Court E. D. Louisiana, New Orleans Division.

Jan. 15, 1964.

Lovett, Howard & Moremen, Wells T. Lovett, Owensboro, Ky., for Markwell and Hartz, Inc.

Fallon W. Bentz, Edward A. Champagne, New Orleans, La., for petitioner.

Jackson & Hess, Victor H. Hess, Jr., New Orleans, La., for respondent.

AINSWORTH, District Judge:

This is a suit by the Acting Regional Director of the Fifteenth Region of the National Labor Relations Board for a temporary injunction under the provisions of Section 10($l$) of the National Labor Relations Act (29 U.S.C. § 160($l$)) pending the final disposition of the matters involved here which are pending before the Board. The matter is based on an unfair labor practice charge as provided by Section 8(b) (4) (i) and (ii), subparagraph B of the Act (29 U.S.C. § 158(b) (4) (i) (ii) (B)). Petitioner avers that on October 23, 1963, Markwell and Hartz, Inc., filed a charge with the Board against respondent, a labor organization, with its principal offices at New Orleans, Louisiana.

The charge as subsequently amended was referred to the Regional Director, who thereafter filed this suit alleging that he has reasonable cause to believe that respondent is engaging in unfair labor practices within the meaning of the Act.

Markwell is a Tennessee corporation doing business as a general contractor in the building and construction industry. It is conceded that it annually receives in excess of $50,000 for services performed outside the State of Tennessee. It has been employed as general contractor on the Filtration Plant expansion of East Jefferson Waterworks District No. 1, Jefferson Parish, Louisiana. In connection with this construction it is conceded that the contractor has received goods and materials from outside the State of Louisiana valued in excess of $50,000. (See Siemons Mailing Service, 122 NLRB 81, 43 LRRM 1056; Ernest Renda Contracting Co., 130 NLRB 1515.) It engaged as subcontractors

Binnings Construction Company, Inc., to do the pile-driving work, and Walter J. Barnes Electrical Company to do the electrical work in connection with the common construction project. Markwell's employees are represented by District 50, United Mine Workers of America, not affiliated with AFL–CIO. Binnings' and Barnes' employees, however, are members of craft unions who are members of respondent council and therefore affiliated with AFL–CIO. Markwell is engaged in a labor dispute with respondent in connection with the work on the Filtration Plant, but there is no such dispute between Binnings, Barnes or any other employer working on the project.

The dispute culminated in picketing by respondent, on October 23, 1963, of the gates leading to the project site. When the dispute arose Markwell arranged to have signs posted at the five gates which provide ingress and egress to the project. One such gate was specifically reserved for the exclusive use of the employees of and suppliers and carriers making deliveries to Markwell. Employees of other persons, such as Binnings and Barnes, were instructed not to use the single gate reserved for Markwell. Nevertheless, respondent's representatives picketed the other gates which would normally be used by the subcontractors' employees resulting in the Binnings and Barnes employees ceasing work on the project. Markwell then removed all of its employees, except its Superintendent and Project Engineer, from the common construction site but the picketing continued, and the subcontractors' employees declined to work on the job.

Petitioner contends that respondent's acts are unfair labor practices in that, by secondary boycott, respondent has successfully persuaded the employees of Binnings and Barnes to refuse to work on the project by virtue of the picketing described. Respondent contends that this activity is primary picketing against the primary employer at the primary situs, and is permitted under the standards adopted by the Supreme Court in the General Electric case (Local 761, International Union of Electrical Workers v. N. L. R. B., 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961)).

The matter presented to the court is a narrow one under the provisions of the Act. The injunctive relief sought here is interlocutory to the final determination of the unfair labor practice charges now pending before the Board and is limited to the time when the Board renders its final decision. The only question which we must decide now is whether there is reasonable cause to believe that the charge against respondent is true and that the unfair labor practice charge affects commerce as provided by the Act. (See Section 10(l) of the Act.)

The standards used by the Board to determine whether so-called primary activity is presumptively valid are set forth in Moore Dry Dock Co., 92 NLRB 547. We find that those standards have not been complied with by respondent here because it is evident that the picketing of the gates other than the reserved gate for Markwell's employees indicates that the picketing is directed to the employees of the secondary employers. The Moore Dry Dock standards must be considered in connection with the Supreme Court's decision in the General Electric case, supra. All parties here cite General Electric in support of their position. According to those standards, three conditions must be met. First, there must be a separate gate marked and set apart from other gates. We find from the evidence that this is a fact here. Second, the work done by the men who use the gate must be unrelated to the normal operations of the employer. We find from the evidence that Markwell does not normally do the work for which he employs subcontractors. Markwell sometimes, but rarely, does pile-driving work. It never does electrical work. Third, the work must be of a kind that would not, if done when the plant were engaged in its regular operations, necessitate curtailing those operations. This condition is probably inapplicable here because of the facts of this case. But the evidence shows that Markwell does not have to

cease operations when subcontractors are performing those assigned to them.

Thus we hold that the General Electric criteria are met here, and the picketing done at gates other than the one reserved for Markwell employees is not primary but secondary picketing designed to force the primary employer to enter into an agreement with respondent and its member unions, and is directed to the employees of the subcontractor to cause them to cease work on the job. If there is an expectation, or a hope, or a desire that employees of the secondary employer will be induced or encouraged to take concerted action so that the secondary employer will cease doing business with the primary employer, the Act bars that activity. Superior Derrick Corporation v. N. L. R. B., 5 Cir., 1960, 273 F.2d 891. Such is the case here. See also Monterey County Building & Construction Trades Council, 142 NLRB No. 18, decided after the Supreme Court's decision in the General Electric case.

We hold that reasonable cause has been established by petitioner. The facts in this case are not in dispute. Respondent may lawfully picket the job, but since one gate has been exclusively reserved for Markwell employees, suppliers and carriers, picketing of the other gates used by employees of subcontractors, such as Binnings and Barnes, could only have the effect and be designed to provide a secondary boycott. The result accomplished, namely, that Binnings' and Barnes' employees will not work on the project while the gates are being picketed, clearly demonstrates this. The antecedent history of the several communications by letter and telephone between respondent and Markwell before the picketing began clearly indicates what Markwell could expect if it did not repudiate its District 50 contract and sign one with respondent's members, that is that respondent would see to it that no employees affiliated with AFL–CIO unions would work on the job. The labor dispute is with the primary employer, Markwell, not with any other employer or subcontractor. The Regional Director of the

Board has found that the evidence is sufficient to support a holding that there is reasonable cause to believe that an unfair labor practice is being committed. We do not disagree with the Regional Director and we find that there is reasonable cause to believe the charge to be true. We do not hold in fact that a violation of the Act has been committed; it is unnecessary for us to make such a determination, but we do hold that injunctive relief is just and proper under the circumstances pending a hearing and determination of the unfair labor practice charge before the Board. Schauffler v. Local 1291, Internat'l Longshoremen's Ass'n, 3 Cir., 1961, 292 F.2d 182.

It is necessary only that petitioner make out a prima facie case or probability or likelihood of violation. Such circumstances exist here. Congress has set the standards for the issuance of this type of injunction. We have no alternative but to grant the relief prayed for.